STATE of Minnesota, Respondent,

v.

W.C. Luther WASHINGTON, Appellant.

A16-0834

Court of Appeals of Minnesota.

Filed March 27, 2017

---

169

Lori Swanson, Attorney General, St. Paul, Minnesota; and John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

## OPINION

REILLY, Judge

W.C. Washington appeals his sentence imposed after he was convicted of failing to register as a predatory offender under Minnesota Statutes section 243.166, subdivision 5(a) (2016). Washington argues that the district court erroneously considered his 1996 third-degree criminal-sexual-assault conviction when calculating his criminal-history score because the conviction decayed during his commission of the instant continuing offense, but before the conclusion of the continuing offense. Because the district court correctly calculated appellant's criminal-history score, we affirm.

## FACTS

On December 31, 1996, Washington was convicted of third-degree criminal sexual conduct and sentenced to 36 months' imprisonment; the district court granted Washington credit for the 99 days he served in pretrial confinement; and the sentence expired on September 23, 1999. Under Minnesota Sentencing Guidelines 2.B.1.c (2016), a felony conviction cannot be used in computing a defendant's criminal-history score if 15 years have passed from the date of expiration of the prior felony to the date of the current offense. Washington's 1996 conviction decayed on September 23, 2014.

Because Washington was convicted of third-degree criminal sexual conduct, he was required to register as a predatory offender for ten years from the date of his conviction. Minn. Stat. §§ 243.166, subds. 1(b)(1)(iii), 3(a), 6(a) (2016). When a person required to register "starts living at a new primary address, . . . the person shall give written notice of the new primary address to the assigned corrections agent or to the law enforcement authority with which the person currently is registered." *Id.*, subd. 3(b) (2016). It is a felony to knowingly violate the provisions of the predatory-sex-offender-registration statute. *Id.*, subd. 5(a). Between December 31, 1999, and September 23, 2014, Washington was convicted of violating the predatory-sex-offender-registration statute on four separate occasions. After each conviction, the ten-year registration period restarted and was extended by five years, as required under Minnesota Statutes section 243.166, subdivision 6(b) (2016), resulting in a registration period lasting until the year 2043.

Between June 2013 and August 2015, Washington reported residing at a residence on Larpenteur Avenue in St. Paul. The Minnesota Bureau of Criminal Apprehension (the BCA) sent three verification letters to this address over the almost 27-month period. Washington returned the first two letters, confirming that he resided at the listed address and that he understood his continuing obligation to immediately notify the BCA of a change to his permanent address. After Washington failed to return the third verification letter, St. Paul police officer Lynette Cherry contacted Washington to investigate his registration status. Washington informed Officer Cherry that he was residing on Douglas Street in St. Paul and had previously resided on Winifred Street in St. Paul. But Washington indicated that he did not register these addresses because he did not receive the verification forms. Officer Cherry notified Washington that he did not need the form to change his address; he could notify the BCA of a change to his address at any time at a St. Paul police station. Shortly thereafter, the state charged Washington with one count of knowingly failing to comply with registration requirements in violation of Minnesota Statutes section 243.166, subdivision 5(a).

At Washington's court trial, the tenant of the Larpenteur Avenue apartment listed as Washington's address testified that Washington did not live with him from June 2013 to August 2015; but he allowed Washington to spend the night at his apartment on approximately ten occasions. The renter testified that he gave Washington permission to have his identification card mailed to this address; the tenant did not, however, permit Washington to continue using his address as Washington's mailing address. Officer Cherry also testified at Washington's court trial. Officer Cherry testified that, when she contacted Washington to verify his address, Washington indicated that he was residing on Douglas Street in St. Paul and had previously resided on Winifred Street in St. Paul. She explained that Washington failed to list these addresses as his primary or secondary addresses from June 2013 to August 2015.

Because the district court concluded that Washington was required to register as a predatory offender until the year 2043 due to his four prior felony registration convictions, and because the district court determined that Washington knowingly violated the registration requirements from June 2013 to August 2015, the district court found Washington guilty of one count of failing to register as a predatory offender. At the sentencing hearing, the district court determined that Washington had a criminal-history score of five. This score included the 1.5 criminal-history points attributed to Washington for his 1996 third-degree criminal-sexual-conduct conviction. Washington did not dispute his criminal-

history score at the sentencing hearing and agreed that he had a criminal-history score of five. The presumptive range for the offense committed by a person with a criminal-history score of five is 26 months to 36 months in prison. Minn. Sent. Guidelines 4.A (2016).The district court sentenced Washington to 27 months in prison, a sentence that is within the presumptive range under the sentencing guidelines.

This appeal follows.

## ISSUE

Did the district court abuse its discretion by imposing a guideline sentence that included 1.5 criminal-history points for a 1996 conviction that decayed during Washington's commission of the current continuing offense?

## ANALYSIS

 Washington challenges his sentence for failing to register his address, arguing that the district court erred in its calculation of his criminal-history score by including 1.5 criminal-history points for a conviction that decayed during his commission of the current offense. Washington did not raise this issue to the district court at sentencing. Generally, failure to raise an issue before the district court results in a forfeiture on appeal. *See State v. Outlaw*, 748 N.W.2d 349, 355 (Minn.App.2008), *review denied* (Minn. July 15, 2008).[1] But review of a defendant's criminal-history score may not be forfeited, *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn.2007), "because a sentence based on an incorrect criminal history score is an illegal sen-

---

1. In *State v. Beaulieu*, the Minnesota Supreme Court recognized that prior decisions use the term "waiver" when referring to a defendant's failure to object to an error in district court, but clarified that "forfeiture" is the appropriate term to use in these instances. 859 N.W.2d 275, 278 n.3 (Minn.2015).

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)).

tence." *Outlaw*, 748 N.W.2d at 356 (quotation omitted).

Generally, we afford district courts "great discretion in the imposition of sentences," and we will reverse a sentencing decision only when a district court abuses its discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn.2014) (quotation omitted). But when the sentencing issue involves interpretation of the sentencing guidelines, we review the statutory construction and interpretation of sentencing guidelines de novo, and we "apply the rules of statutory construction to our interpretation of the sentencing guidelines." *State v. Campbell*, 814 N.W.2d 1, 4 (Minn. 2012) (citation omitted). Like statutes, when the language of the sentencing guidelines is "plain and unambiguous, it is presumed to manifest legislative intent and we must give it effect." *Id.*

"Minnesota's Sentencing Guidelines provide uniform standards for the inclusion and weighting of criminal history information that are intended to increase the fairness and equity in determining a defendant's criminal-history score." *State v. Maley*, 714 N.W.2d 708, 711 (Minn.App.2006) (quotation omitted). The guidelines direct that prior felony convictions be included in a defendant's criminal-history score. *See* Minn. Sent. Guidelines 2.B.1.b (2016).But the district court may not assign points for prior felony convictions that have decayed. *See* Minn. Sent. Guidelines 2.B.1.c. A prior felony conviction has decayed if, when "computing the criminal history score[,] . . . a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense." Minn. Sent. Guidelines 2.B.1.c.

At issue here is whether the date for determining prior-conviction-decay during the commission of a continuing offense is the start date or the end date of a continuing offense. This is a matter of first impression. When reviewing sentencing guidelines, we accord words and phrases their plain and ordinary meaning, and we assume the authors of the guidelines do "not intend absurd or unreasonable results." *Longoria v. State*, 749 N.W.2d 104, 106 (Minn.App.2008), *review denied* (Minn. Aug. 5, 2008). Minnesota Sentencing Guidelines 2.B.1.c provides, "[a] prior felony sentence or stay of imposition following a felony conviction must not be used in computing the criminal history score if a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense." The obligation to register as a predatory offender is continuing; it is an ongoing and fluid duty that requires the offender to provide current and updated registration information to the BCA for the entirety of the registration period. *See* Minn. Stat. § 243.166, subd. 6(a). And "violation of the predatory-offender-registration statute is an offense that continues as long as the person required to register fails to do so." *Longoria*, 749 N.W.2d at 107.

In the instant case, Washington's predatory-offender-registration violation began in June 2013, when he first reported residing at an address at which he did not reside, and continued without interruption until August 2015, almost one year after his 1996 conviction decayed. To interpret Minn. Sent. Guidelines 2.B.1.c as requiring that a continuing offense conclude before a prior felony decays would lead to an absurd or unreasonable result. In essence, this interpretation would require district courts to exclude criminal-history points for nearly decayed felonies simply because the offender continued to offend beyond the decay period. Such a result would incentivize continuous offending and penalize

those who come into compliance with registration requirements before decay.

Washington argues that the language of Minn. Sent. Guidelines 2.B.1.c provides that a prior felony must decay at the end of, or after, the commission of a continuing offense—not during the commission of a continuing offense—to be included in a defendant's criminal-history score. As support for this contention, Washington cites two cases which hold that, in the statute of limitations context, the offense date is the date on which the conduct ceases. *See State v. Lawrence*, 312 N.W.2d 251 (Minn. 1981); *see also State v. O'Hagan*, 474 N.W.2d 613 (Minn.App.1991), *review denied* (Minn. Sept. 25, 1991). In *Lawrence*, the Minnesota Supreme Court held that possessing or concealing stolen goods is a continuing offense for the purpose of the statute of limitations, and the supreme court determined that the limitations period begins to run only after the offense is completed. 312 N.W.2d at 253-54. Following *Lawrence*, this court similarly concluded in *O'Hagan* that concealing and retaining possession of another's property without consent is a continuing offense that is complete only when a defendant stops concealing or possessing the property. 474 N.W.2d at 622. Like *Lawrence*, we determined that the charge was not barred by the statute of limitations because the limitations period began to run only after commission of the continuing offense concluded. *Id.* at 621-22. Washington's reliance on these cases is not persuasive.

The holdings in *Lawrence* and *O'Hagan* support our conclusion here. We concluded in *Longoria* that a "violation of the predatory-offender-registration statute is an offense that continues as long as the person required to register fails to do so." 749 N.W.2d at 107. Like *Lawrence* and *O'Hagan*—where Minnesota courts determined

that it would be unreasonable to begin to run the statute of limitations period before the conclusion of a continuing offense—it would be similarly unreasonable to conclude that a district court may not assign points for a nearly decayed felony only because a defendant continued to commit a separate continuing offense beyond decay. The district court is not obligated to discount a defendant's criminal-history score simply because it included prior offenses that are nearing decay when a defendant begins to commit a continuing offense. *See Maurstad*, 733 N.W.2d at 147 (noting that "sentences must be based on correct criminal history scores"); *see also State v. Ferguson*, 441 N.W.2d 508, 509 (Minn.App. 1989) ("The Minnesota Sentencing Guidelines are clear that prior felony offenses do not decay for 15 years and are considered in computing criminal history scores."), *review denied* (Minn. July 12, 1989). The district court therefore did not abuse its discretion by sentencing Washington to a presumptive term that accounted for the 1.5 criminal-history points Washington accumulated as a result of his 1996 conviction.

Alternatively, Washington contends that this court must remand his case to the district court for resentencing under the 16-month minimum sentence, arguing that the state failed to prove that this registration violation occurred before the date on which his 1996 conviction decayed. *See State v. Edmison*, 379 N.W.2d 85, 87 n.1 (Minn.1985) (noting that the "state has the burden of proof in establishing a defendant's criminal history for Sentencing Guidelines purposes") (citation omitted). Review of the record conclusively shows that the state presented evidence confirming that Washington's registration violation began in June 2013 and continued until August 2015. Thus, the district court properly determined that Washington's

registration violation preceded the decay of his 1996 conviction.

## DECISION

When determining decay, for purposes of calculating criminal-history scores, courts must look to the start date of a continuing offense, not the end date of a continuing offense.

**Affirmed.**